UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIFFANY COX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | 1:08-cv-00233-SEB-JMS |
| PENDLETON CORRECTIONAL ) | |
| FACILITY/INDIANA STATE ) | |
| REFORMATORY, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Motion for Summary Judgment [Docket No. 35] filed by Defendant, Pendleton Correctional Facility/Indiana State Reformatory ("Pendleton"), on February 2, 2009, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.  Plaintiff, Tiffany Cox ("Cox"), brought her complaint pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.  Cox claims that the termination of her employment by Defendant was motivated by impermissible retaliation for complaints she had made of sexual harassment, a protected activity under Title VII.  Compl. ¶¶ 23-25.  In its motion for summary judgment, Defendant contends that Cox's claims must fail because she is unable to establish a *prima facie* case of retaliation under either the direct or indirect methods of proof.  For the reasons detailed in this entry, Defendant's Motion for Summary Judgment is <u>GRANTED</u>.

**Factual Background**

Cox was employed by Defendant as a correctional officer for approximately five months, from April 24, 2006, to September 20, 2006. Compl. ¶ 13, 20; Def.'s Br. at 1. On her first day of work, Cox received, signed, and initialed a sheet identifying each of the employee policies that she had been provided. Deposition of John Flowers ("Flowers Dep.") at 32-33. This included Defendant's Sexual Harassment Policy as well as its Employee Standards of Conduct policy, the latter of which explains what behavior constitutes a dereliction of duty and what the appropriate procedures are for leaving a duty or post. Affidavit of Steven M. Hodge ("Hodge Aff.") ¶ 3. A form entitled "Receipt for Policy," signed by Cox on April 24, 2006, states that she, as an employee, was responsible for knowing all of Defendant's policies and administrative procedures. Ex. 3 attached to Hodge Aff.

As a new hiree, Cox served as a six-month probationary employee before qualifying to become a regular employee. Employees with the Pendleton facility may be terminated for any rule violation occurring during their probationary period of employment. On the date Cox was terminated, she had not yet completed her probationary period of employment. Hodge Aff. at ¶ 7.

**Plaintiff's Disciplinary Record and Termination**

Cox had a clear disciplinary record for approximately the first four and a half

months of her employment at Pendleton.  However, Defendant contends that, on September 11, 2006, Cox left her assigned post without the required authorization.  On that date, Cox had been assigned to the second floor post at the K dorm.  Cox admits that, during her shift, she left her assigned post at K dorm at least twice to go to the recreation yard.  Deposition of Tiffany Cox ("Cox Dep.") at 95-96, 99.  Defendant's Employee Standards of Conduct policy mandates that an employee who is assigned to a post involving the supervision of offenders shall not leave the post without proper authorization.  Hodge Aff. ¶ 3; attached Ex. 1.  Captain John Flowers testified (by deposition) that only a shift supervisor or an officer in charge ("OIC") with a rank of sergeant or above is empowered to give such authorization.  Flowers Dep. at 23.

   Although Defendant claims that Cox did not obtain the required permission to leave the K dorm that day, it is undisputed that Cox could not in fact have left K dorm without the consent of Officer in Charge Rogers because the housing units were locked and the only person with a key to the unit is the on-duty OIC.  Cox Dep. at 170; Flowers Dep. at 8-9.  According to Defendant, Officer Rogers did not have the proper rank to authorize Cox to leave.  Flowers Dep. at 23.  In order to properly leave her post that day, Cox needed the permission of her supervisor, Captain Flowers.  Id. at 27.  Cox testified (by deposition) that Officer Rogers radioed the recreation yard to secure permission, but received no response, either granting or denying permission.  Cox Dep. at 169-70.  However, according to Captain Flowers, although typically he could hear radio transmissions between the housing units, such as K dorm, and the recreation yard, that

day he overheard no radio communication relating to Cox's movements nor did he receive a specific request from either Cox or Officer Rogers authorizing Cox to leave her post. Flowers Dep. at 23-24.

Following notification to Captain Flowers by the recreation yard staff that Cox had left her post, Captain Flowers sent a memorandum to Custody Supervisor Major Dushan Zatecky requesting a "pre-deprivation" meeting for Cox. Id. at 8; Pl.'s Ex. H. On September 20, 2006, Major Zatecky conducted such a meeting at which Human Resource Director Nancy House, Lead Captain Chuck DeWeese, and Cox were all in attendance. At that meeting, Cox was notified that her employment was being terminated for failure to meet expectations as a correctional officer during her probationary period of employment based on her having left her post several times on September 11, 2006, without proper authorization. Declaration of Dushan Zatecky ("Zatecky Decl.") ¶¶ 3-5. The OIC on duty, Officer Rogers, received no discipline in connection with this incident. Flowers Dep. at 11.

**Plaintiff's Complaints of Sexual Harassment**

In June or July 2006, a few months after she had begun her employment with Defendant, Cox first informed her supervisors, Captain Flowers and Lieutenant Perrault, that she felt that she was being subjected to sexual harassment and a hostile working environment. Cox Dep. at 61. Her specific complaint was that she was being harassed by a male employee, Officer Marvel, as well as a female employee, whom she did not

identify. Id. According to Cox, Officer Marvel had told her that she was too nice to the offenders and that she should stop treating them so nicely. Id. at 62. Cox also complained that she had observed Officer Marvel tell other correctional officers as well as certain offenders that she was acting too friendly towards the offenders and that she was not to be trusted. Id. at 67. Additionally, Cox reported that she had heard that rumors were being spread by offenders and correctional officers, including Officer Marvel, that she was giving "blow jobs" in the recreation yard in exchange for payments of one thousand dollars and also that she had intercourse with an offender in the icehouse at the facility. Cox concedes that she never directly overheard offenders or correctional officers spreading these rumors, but maintains that an offender had informed her of the rumors. Id. at 68-70.

After her initial complaint to Captain Flowers and Lieutenant Perrault, Captain Flowers arranged for Cox to speak with Equal Employment Opportunity representative, Joe Downing. In July 2006, Cox reported the allegations and rumors to Mr. Downing and her supervisor at the canine unit. Id. at 65. Thereafter, Cox met with Mr. Downing a second time and again spoke with Captain Flowers and Lieutenant Perrault. After complaining a third time to Captain Flowers, she was directed to discuss her concerns with Officer Michael Rains of the Internal Affairs Department. Id. at 79.

At some point after Cox spoke with Officer Rains, in August or early September 2006, Officer Marvel was transferred for approximately two weeks to a position in the visitation room located outside of the walls of the facility and away from Cox, who

5

worked most often in the recreation yard. Id. at 82. Officer Rains facilitated a meeting between Officer Marvel and Cox at the beginning of that September in an effort to resolve the dispute between them. Id. at 84-85; Deposition of Michael Rains ("Rains Dep.") at 7. In September 2006, Officer Rains offered Cox a position in the visitation room, which would have removed her from contact with Officer Marvel, but she declined that offer. Cox Dep. at 108-109.

**The Instant Litigation**

Following the termination of her employment in September 2006, Cox filed, on April 6, 2007, a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discharged in retaliation for complaining that she was being subjected to sexual harassment and a hostile working environment. On February 22, 2008, after receiving her "right to sue letter" from the EEOC, Cox filed the Complaint in this action alleging that Defendant retaliated against her in violation of Title VII.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

    The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

    Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enter., Inc.

v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

**II.     Discussion**

"Title VII protects employees 'from retaliation for complaining about the types of discrimination it prohibits.'" Antonetti v. Abbott Labs., 563 F.3d 587, 592 (7th Cir. 2009) (quoting Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000)). Making complaints of sexual harassment is a statutorily protected activity, as discrimination based on sex is prohibited under Title VII.  Unlawful retaliation occurs when an employer takes an adverse employment action against an employee because the employee opposed an employment practice made unlawful by the Act. Fine v. Ryan Int'l Airlines, 305 F.3d 746, 751 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)[1])).

A plaintiff has two methods of proof available to demonstrate retaliation: the direct method or the indirect method. Moser v. Ind. Dep't of Corr., 406 F.3d 895, 903 (7th Cir.

---

[1] 42 U.S.C. § 2000e-3(a) states, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this title. . . ."

2005); see also Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002). Cox has addressed only the direct method of proof in her response brief,[2] so we shall follow her lead and proceed solely with that analysis. Under the direct method of proof, a plaintiff must present sufficient evidence to demonstrate that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action by the employer, and (3) there is a causal connection between the two. Haywood v. Lucent Techs., Inc., 323 F.3d 524, 531 (7th Cir. 2003).

Here, Cox contends that she was unlawfully terminated in retaliation for having made complaints of sexual harassment to her various supervisors. Defendant rejoins that Cox's claim fails because she is unable to demonstrate either the first or third prong of the direct analysis, to wit, that she engaged in statutorily protected activity or that a causal connection exists between her complaints and her termination.[3]

---

[2] Although Cox mentions the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in her response brief, the elements that she discusses as those she must prove, to wit, that she engaged in statutorily protected activity, that her employer subsequently took an adverse employment action against her, and that there is a causal connection between the two, comprise the direct method of proof, rather than the burden-shifting, indirect method.

[3] In the alternative, Defendant argues that Cox's claim for monetary damages is precluded under the after-acquired evidence doctrine. According to Defendant, after Cox was terminated, it was discovered that she had allegedly been involved in an inappropriate relationship with an offender that would have resulted in her termination had Defendant known of the relationship at the time she was still employed at the facility. Because we find, for the reasons detailed below, that Cox has failed to make out a case of retaliation under the direct method of proof, we need not and shall not address this argument.

### A.     Engaged in a Statutorily Protected Activity

A cause of action for retaliation does not require a plaintiff to prove that the conduct she believed to be sexual harassment actually violated Title VII. Magyar v. Saint Joseph Reg'l Med. Ctr., 544 F.3d 766, 771 (7th Cir. 2008). Rather, a plaintiff must only establish that she had a "sincere and reasonable belief" that she was complaining about and thereby opposing an unlawful employment practice in violation of Title VII. Id. (quoting Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701, 706 (7th Cir. 2000)). "The objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by [Title VII]." Id. However, "an employee's general complaints of discrimination or harassment are not sufficient without either indicating a connection to a class protected by Title VII or at least providing facts sufficient to create an inference of such a connection." Nellum v. Ford Motor Co., 2008 WL 312922, at *9 (S.D. Ind. Feb. 1, 2008) (citations omitted). In the gender discrimination context, "[a]lthough an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII retaliation protections, 'she has to at least say something to indicate her [gender] is an issue.'" Sitar v. Indiana Dep't of Transp., 344 F.3d 720, 727 (7th Cir. 2003) (quoting Miller, 203 F.3d at 1007-1008).

We find here that Cox has presented sufficient evidence from which a jury could conclude that the rumors she complained of to her supervisors were directed at Cox because of her sex, and that her employer was aware that her complaints concerned

sexual harassment. It is obvious by the number and nature of the complaints she made that Cox subjectively believed that she was in fact being sexually harassed and subjected to a hostile work environment. Cox complained to her supervisors that both a male officer and a female officer were spreading rumors about her, including rumors that she was offering to engage in sexual acts in exchange for money with offenders and that she had engaged in intercourse with a male offender on the facility's grounds. There is no evidence in the record to suggest that similar rumors were spread about any male employees or the male offenders with whom Cox was allegedly involved. Cf. Pasqua v. Metro. Life Ins. Co., 101 F.3d 514 (7th Cir. 1996) (holding that rumors of an illicit relationship spread about both the male and the female involved did not constitute discrimination based on sex). Taking the evidence in the light most favorable to Cox, considering the sexual nature of the rumors and the fact that they were only being spread about Cox and not any of her male counterparts, we find it reasonable for her to have believed that she was complaining of conduct that falls within the category of behavior prohibited by Title VII.

Defendant nevertheless contends that Cox's complaints cannot be considered statutorily protected activity because she never reduced her oral complaints to writing as required by Defendant's sexual harassment policy. See Ex. 2 attached to Hodge Decl. ("Verbal reports of sexual harassment must be reduced to writing by either the complainant or the individual(s) designated to receive complaints, and be signed by the complainant."). However, in an email communication addressing Cox's complaints,

Superintendent Knight instructed Officer Rains to instruct Officer Marvel to stop spreading rumors about Cox because, "spreading rumors can be deemed as creating a hostile work environment." Pl.'s Ex. F. It is clear, therefore, that, regardless of the form in which she registered her complaints, Cox's supervisors considered her complaints to be related to sexual harassment. Accordingly, we conclude that Cox has shown that, when she made oral complaints to various supervisors at Pendleton, she was engaged in a statutorily protected activity.

### B.    Adverse Employment Action

It is undisputed that when Cox's employment with Defendant was terminated on September 20, 2006, she suffered an adverse employment action. See Haywood, 323 F.3d at 531 (finding an employee's termination "certainly qualifies as an adverse employment action," as it shows a quantitative and qualitative change in the terms of her employment).

### C.    Causal Connection

To prove a causal connection between the statutorily protected activity and the adverse employment action, a plaintiff may rely upon direct or circumstantial evidence. Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). Direct evidence is evidence that "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." Pitasi v. Gartner Group, Inc., 184 F.3d

709, 714 (7th Cir. 1999) (quoting Cowan v. Glenbrook Sec. Servs., Inc., 123 F.3d 438, 443 (7th Cir. 1997)).  This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus."  Rogers, 320 F.3d at 753 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000)).  The evidence must directly relate to the discriminatory intent and the employment action in question.  Pitasi, 184 F.3d at 714.  Not surprisingly, no such direct evidence has been presented by Cox in this case.  Thus, to prevail on her retaliation claim, Cox must present a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."  Ridings v. Riverside Med. Ctr., 537 F.3d 755, 771 (7th Cir. 2008) (quoting Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006)).

      Circumstantial evidence of retaliation includes "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn."  Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007).  While suspicious timing is a type of circumstantial evidence that "*together with other facts*, can *sometimes* raise an inference of a causal connection," Magyar, 544 F.3d at 772 (emphasis added), "mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue."  Stone, 281 F.3d at 644.

      Here, the sole evidence Cox presents to establish a causal connection between her discharge and her complaints about conduct she believed to be sexual harassment is the

temporal proximity between Cox's oral complaints of harassment and her termination from employment. Cox began complaining of what she perceived to be sexual harassment in June 2006, and made additional complaints through August 2006. Under Seventh Circuit law, the "suspicious-timing clock" can re-start if the non-moving party made multiple complaints. Magyar, 544 F.3d at 772. Therefore, for purposes of our analysis, we find that Cox last complained in August 2006, when she complained to Internal Affairs Officer Rains. Pl.'s Resp. at 13. Approximately one month later, on September 20, 2006, Cox was terminated. Although, as Cox contends, the Seventh Circuit "has found a month short enough to *reinforce* an inference of retaliation," Magyar, 544 F.3d at 772 (emphasis added), such evidence by itself is not ordinarily sufficient to demonstrate a causal connection. Here, Cox can cite to no additional circumstantial evidence which, when coupled with the suspicious timing, supports an inference of retaliation. Thus, no reason exists to deviate from the well-established principle that temporal proximity alone is rarely sufficient to create a triable issue.

We recognize that "[a] causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employee's decision." Gates v. Caterpillar, Inc., 513 F.3d 680, 686 (7th Cir. 2008) (quoting Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005)). However, Cox has failed to put forth any evidence to support such a showing. At the time her employment was terminated, Cox had not yet completed her six-month trial period of employment. Accordingly, she was not subject to the

14

progressive discipline policy and could be terminated for any rule violation.

Cox concedes that leaving her post without proper authorization would be in dereliction of her duties. Pl.'s Resp. at 4-5. Presumably, she also knew that Officer Rogers was required to request authorization from Captain Flowers, given her testimony that Officer Rogers had requested permission over the radio, but received no answer. Cox Dep. at 169-70. It remains undisputed that, on the day Cox was assigned to the K dorm, she left her post without receiving authorization from Captain Flowers. As a probationary correctional officer, this rule violation could, and insofar as we have been told did, lead to her termination of employment. Even though Cox had never been disciplined before this incident, pursuant to duly promulgated its employment policies, Defendant could permissibly terminate Cox's employment for even her first infraction.[4] In short, Cox did not provide sufficient evidence to establish that the termination of her employment was substantially motivated in retaliation for her having engaged in a protected activity by complaining of sexual harassment or a hostile work environment.

For all the reasons detailed above, Cox has failed to establish the elements of a case of retaliation under the direct method of proof. Accordingly, we GRANT Defendant's Motion for Summary Judgment.

---

[4] Although it is unclear why Officer Rogers, who Defendant concedes must have unlocked the door for Cox, was not also disciplined, this discrepancy is insufficient to raise an inference of causation in Plaintiff's case. As discussed above, despite never having been previously disciplined, Cox was subject to termination for even her first rule violation because she had not yet completed her probationary period of employment. Unlike Cox, it appears that Officer Rogers was a status employee and thus entitled to more protections, including a progressive discipline policy.

### III.  Conclusion

Having carefully considered the parties' arguments, Defendant's Motion for Summary Judgment is <u>GRANTED</u>.  Final judgment shall issue in accordance with this entry.

IT IS SO ORDERED.

Date:  _____07/09/2009_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Rochelle Elaine Borinstein
ATTORNEY AT LAW
rborinstein@stanleykahn.com

Kathy Jo Bradley
OFFICE OF THE INDIANA ATTORNEY GENERAL
kathy.bradley@atg.in.gov

Cory Christian Voight
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory voight@atg.in.gov